AH IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JEANNE ANNE MacDONALD,
Independent Administrator of the
Estate of SCOTT MacDONALD,

        Plaintiff,

      v.

CITY OF DESPLAINES and EDWIN
RIOS,

        Defendants.

No. 24-cv-07624
Judge Franklin U. Valderrama

## ORDER

In the early evening of May 27, 2023, the Des Plaines Police Department received a non-emergency call indicating that Scott MacDonald (Scott) was having a psychotic episode in his apartment and that paramedics were needed. Several City of Des Plaines Police Officers responded to the call, including Defendant Edwin Rios (Rios). Tragically, Rios shot and killed Scott, after Scott approached the Officers in the hallway to his apartment, while holding an axe. Jeanne Anne MacDonald, as Independent Administrator of the Estate of Scott MacDonald (the Estate) sued the City of Des Plaines and Rios (collectively, Defendants) in state court, asserting claims for wrongful death under state law against Rios, excessive force under 42 U.S.C. § 1983 against Rios, and a *Monell* claim against the City of Des Plaines. R. 1-1, Compl.[1] Defendants removed the case to this Court pursuant to 28 U.S.C.

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

§§ 1331, 1367, 1441, and 1446. R. 1, Notice Removal. Defendants now move to dismiss the complaint under Federal Rule 12(b)(6) for failure to state a claim. R. 8, Mot. Dismiss.

## Background[2]

On May 27, 2023, at approximately 7:33 p.m., the mother of a friend of Scott MacDonald placed a non-emergency call to the Des Plaines Police Department stating that Scott "was having a 'psychotic break' in his apartment, that he had taken a 'bunch of Xanax,' and that they probably needed 'medicine and police.'" Compl. ¶ 8. The Des Plaines Police Department dispatcher "advised the caller that she was going to transfer the call to the fire department, at which time she advised the fire department 'it's going to be a psych evaluation.'" *Id*. ¶ 9. After the call, several Des Plaines Police Department Officers, including Rios, went to Scott's apartment, located on Thacker Street. *Id*. ¶ 10. Upon arrival, the Officers, including Rios, met with the caller and then entered the premises, which is a multi-unit apartment/condominium complex. *Id*. ¶ 11.

Upon entering the common hallway of the third floor of the premises, the caller pointed out Scott's apartment to the Officers, which was located at the end of the common hallway. Compl. ¶ 12. As the Officers walked down the hallway, Rios opened a door leading to a common stairway for the premises, and then entered and remained stationed in that stairway, out of Scott's view, with the door open. *Id*. ¶ 13. As the Officers walked slowly down the common hallway, they encountered Scott "slowly

---

[2]The Court accepts as true all of the well-pleaded facts in the Complaint and draws all reasonable inferences in favor of Plaintiff. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

walking towards them after he had apparently exited the apartment at the end of the hallway." *Id*. ¶ 14.

When the Officers saw Scott, he was carrying an axe in front of his body. Compl. ¶ 15. The Officers then "quickly backed down the hall, away from [Scott], increasing their distance from [Scott], while shouting at [Scott] to drop the axe." *Id*. ¶ 16. As the Officers were shouting at Scott to drop the axe, Rios "remained in the stairwell off the hallway," out of Scott's view, with the door to the stairwell opened. *Id*. ¶¶ 18, 20. As Scott walked down the common hallway towards the Officers, the Officers increased their distance from Scott. *Id*. ¶¶ 20–21. As Scott walked past the open door to the stairwell, where Rios was positioned, Rios suddenly shot and killed Scott. *Id*. ¶ 22. At the time Rios shot Scott, the other Officers "were a minimum of fifty feet away" from Scott. ¶ 23.

The Estate sued Defendants in state court asserting claims for Wrongful Death against Rios (Count I); Survival against Rios, (Count II); Wrongful Death against the City of Des Plaines (Count III); Survival against the City of Des Plaines (Count IV); Excessive Force against Rios under 42 U.S.C. § 1983 (Count V); a claim under 42 U.S.C. § 1983 against the City of Des Plaines based on agency (Count VI); and a *Monell* claim against the City of Des Plaines (Count VII).[3] Compl. Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446. Notice Removal. Before the Court is Defendants' fully briefed motion to dismiss the Complaint under Federal Rule 12(b)(6), Mot. Dismiss, as well as the Estate's motion

---

[3] Plaintiff's Complaint lists two counts as VI.

for the Court to consider the video exhibits, R. 27, Mot. Consider. The Court held a hearing on the motions on March 10, 2025. R. 36. For the following reasons, the Court grants in part and denies in part the motion to dismiss and denies the motion to consider the video exhibits.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

### I.    Motion to Consider Video Exhibits

The Court starts with the parties' request that the Court consider the Officers' body-worn camera (BWC) footage when deciding the motion to dismiss, as much of

Defendants' motion to dismiss is premised on Rios's BWC footage. R. 9, Memo. Dismiss. Defendants attached Rio's BWC video to their motion along with an affidavit from Rios. R. 9-1, Rios Aff; Exh. 1. Surprisingly, the Estate does not object to the Court's consideration of the BWC on a motion to dismiss. R. 18, Resp. 2. On the contrary, the Estate also invites the Court to consider not only the BWC footage attached to Rios's affidavit, but also additional footage from other Officers' BWCs, because from the Estate's perspective, the BWC footage reveals issues of fact which preclude granting the motion to dismiss. *Id.*; R. 23, Exhs. B–D. Indeed, as noted above, the Estate filed a motion requesting that the Court consider the video exhibits. Mot. Consider.

Generally, a court "cannot consider evidence outside the pleadings to decide a motion to dismiss without converting it into a motion for summary judgment." *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018). There are exceptions to this general rule. One such exception is the doctrine of incorporation by reference. Under this doctrine a court may consider extraneous materials on a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to [the] claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (cleaned up).[4] In the cases cited by the parties in support of their request that the Court consider the BWC videos, the videos were referenced in the complaints. *See*

---

[4]This Order uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

*Hyung Seok Koh v. Graf*, 2013 WL 5348326, at *9 (N.D. Ill. Sept. 24, 2013); *Tate v. City of Chicago*, 2020 WL 6715660, at *1 (N.D. Ill. Nov. 16, 2020) (same).[5]

Here, the complaint does not reference the BWC footage, nor does it attach it as an exhibit. Nor are the BWC videos central to the Estate's claims themselves, like a contract is to a breach of contract claim, or like the two videos on which a copyright infringement claim was premised in *Brownmark Films*, 682 F.3d at 690. Like two recent courts in this District, the Court declines to consider the BWC footage at the pleading stage where the "complaint does not mention BWC footage and [the Estate's] claims themselves do not hinge on that footage." *Daoud v. City of Chicago*, 2023 WL 5389015, at *4 (N.D. Ill. Aug. 22, 2023); *see also Brown v. City of Chicago*, 594 F. Supp. 3d 1021, 1030 (N.D. Ill. 2022) ("[W]hile the videos will provide key insights into the allegedly unreasonable events that took place on the morning of March 15th, the videos are not themselves dispositive of the facts at issue and Plaintiffs could have brought this § 1983 case if the BWC footage never existed.").

Therefore, in order to consider the BWC, the Court would have to convert the motion to dismiss to a motion for summary judgment. The parties, however, informed

---

[5]Nor does *Jackson v. Curry*, cited in Defendants' memorandum to dismiss, compel a different result. Memo. Dismiss at 4 (citing 888 F.3d 259, 264 (7th Cir. 2018)). In *Jackson*, the court determined that it "lack[ed] jurisdiction to review the district court's decision not to watch the video at [the pleading] stage." 888 F.3d at 264. In so doing, it rejected the defendants' argument that the district court erred by not considering the video because it was required to resolve qualified immunity at the earliest feasible time, and consider video that contradicted the plaintiff's version of events. *Id.* The Seventh Circuit noted that the video likely did not "completely belie[ ]" the plaintiff's claims, since it did not show everything, such as "smell" or "ocular details," or what the officers knew. *Id.* Therefore, contrary to Defendants' position, *Jackson* does not require the Court to consider a video not referenced or attached to a complaint simply because the defendant argues that the video contradicts the complaint's allegations.

the Court at the motion hearing that they do not wish to have the Court convert the motion to dismiss into a motion for summary judgment.

While the parties' desire for prompt resolution of the motion to dismiss is understandable, "it does not justify running roughshod over the Federal Rules of Civil Procedure." *Robinson v. Crot*, 2024 WL 1603485, at *2 (N.D. Ill. April 12, 2024). "[I]f video exists that clearly contradicts [a plaintiff's] story, an early and cost-efficient motion for summary judgment might be appropriate." *Felton v. City of Chi*, 827 F.3d 632, 637 (7th Cir. 2016). Therefore, the Court declines the parties' invitation to consider the BWC footage in resolving the motion to dismiss.

## II.    Excessive Force against Rios under 42 U.S.C. § 1983 (Count V)

In Count V, the Estate asserts a claim for excessive force against Rios under 42 U.S.C. § 1983. The complaint alleges that the use of force by Rios was unreasonable because Scott did not pose an immediate threat to either Rios or his fellow Officers at the time Rios discharged his weapon. Compl. ¶¶ 64, 65.

Defendants argue that Count V fails to state a claim for excessive force against Rios because Rios's BWC footage reveals that Scott, although in the midst of a mental health crisis, posed a serious and imminent threat to Rios such that the Fourth Amendment authorized Rios to use deadly force. Memo. Dismiss at 6–7 (citing *King v. Hendricks Cty. Comm'rs,* 954 F.3d 981, 983–95, 987 (7th Cir. 2020)). The BWC, from Defendants' perspective, shows that Scott was "within arm's reach of Rios, aggressively brandishing an axe and ignoring commands" from other Des Plaines Officers to "stay" and "drop it." *Id*. at 7. Defendants insist that there can be no

7

reasonable inference that Scott was not threatening Des Plaines Police Officers with a weapon and that he did not pose an immediate threat of serious bodily harm to Rios and the other Des Plaines Officers. *Id*.

Here, the motion to dismiss the Estate's unreasonable seizure claim against Rios is based entirely on material extraneous to the complaint (the BWC) and, as discussed above, the parties cite no applicable exception to the rule limiting the Court's resolution of the motion to the four corners of the complaint. Since the parties do want the Court to convert the motion to dismiss to a motion for summary judgment, the motion to dismiss Count V is denied as it is based on matters outside the complaint. If the parties seek prompt resolution of this issue, the Court encourages the parties to file a motion for summary judgment on Count V.

## III. Municipal Liability – Agency (Count VI)

In Count VI, the Estate alleges that the City of Des Plaines is liable based on the actions of Rios based on the principle of agency. Compl. at 12. Defendants move to dismiss this count on the basis that there is no liability under Section 1983 under an agency theory. Memo. Dismiss at 8 (citing *Bohannon v. City of Indianapolis*, 46 F.4th 669 (7th Cir. 2022)). In response, the Estate concedes that there is no municipal liability based on agency. Resp. at 7. Accordingly, the motion to dismiss Count VI is granted.

## IV. Municipal Liability - *Monell* (Count VII)

In Count VII, the Estate claims that the City is subject to liability under *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978) for failing to adequately train

dispatchers to dispatch Crisis Intervention Team (CIT) trained officers when responders are likely to encounter someone in a mental health crisis, and for failing "to implement a means and method by which the department's CIT trained officers on any shift could be identified by dispatchers, and then dispatched to respond to such calls which fail." Compl. ¶ 83. The Estate alleges that these failures resulted in the likelihood of constitutional deprivations such as what occurred to Scott. *Id.* ¶ 85.

A municipality may be held liable under Section 1983 only "when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). Under *Monell*, a municipality is a "person" and may be held liable for its own violations of the federal Constitution and laws under § 1983. *Bohannon v. City of Indianapolis*, 46 F. 4th 669, 675 (7th Cir. 2022).

To state a *Monell* claim, a plaintiff must allege that his or her constitutional injury was caused by: "(1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well-settled that it constitutes a custom or usage with the force of law even though it is not authorized by written law or express policy; or (3) an allegation that a person with final policy-making authority caused a constitutional injury." *Rossi v. City of Chi.*, 790 F.3d 729, 737 (7th Cir. 2015); *Mack v. City of Chi.*, 2020 WL 7027649, at *5 (N.D.

Ill. Nov. 30, 2020). The plaintiff must also plead that the policy or custom is the "moving force of the constitutional violation." *Monell*, 436 U.S. at 694–95.

Defendants argue that the Estate fails to plausibly plead a Section 1983 claim under *Monell* for two reasons. First, the Fourth Amendment does not require a police officer to engage in de-escalation techniques rather than force. Second*,* the Estate fails to allege a widespread practice, as it alleges only one isolated occurrence where the City of Des Plaines's alleged training and directives related to dealing with mental health crises allegedly resulted in a constitutional deprivation due to a use of force. Memo. Dismiss at 10–11.

The Estate counters that municipalities, such as the City of Des Plaines, are required to comply with the standards imposed by the Illinois Law Enforcement Training and Standards Board, which includes standards requiring officers to receive Crisis Intervention training pursuant to 50 ILCS 705/10.7. Resp. at 8. CIT training, according to the Estate, trains police officers "to identify signs and symptoms of mental illness, to de-escalate situations involving individuals who appear to have a mental illness and connect that person in crisis to treatment." *Id.* The Estate points out that it alleges that the City failed to adequately train its operators and dispatchers "'to specifically dispatch CIT trained officers to calls where responders were likely to encounter someone experiencing a mental health crisis' and failed 'to implement a means by which the department's CIT trained officers on any shift could be identified by dispatchers, and then dispatched to respond to such calls.'" Resp. at 8 (quoting Compl. ¶ 83). As for Defendants' second argument, the Estate counters

10

that a "plaintiff may bring a *Monell* claim on a single constitutional violation where the need for training is so obvious that the municipality's failure to act reflects a deliberate indifference to the public." Resp. at 8 (citing *Demos v. Schneider*, 2023 WL 7166730, at *4 (N.D. Ill. Oct. 27, 2023)). Not only that, but a singular violation from the Estate's perspective can be sufficient to support a *Monell* claim where the plaintiff alleges a recurring and obvious risk. Resp. at 8-9 (citing *Haligas v. City of Chicago*, 609 F. Supp. 3d 619, 627 (N.D. Ill. 2022)).

In Reply, Defendants argue that contrary to the Estate's assertion, Illinois law, specifically, 50 ILCS 705/10.17 did not require the City to do anything. R. 21, Reply at 4. Turning to the widespread custom or practice argument, Defendants point out that the Seventh Circuit has stated that a pattern of tortious conduct demonstrating the need for additional training is required and that one-time negligence is not enough. *Id.* at 5 (citing *Flores v. City of S. Bend*, 997 F.3d 725, 731 (7th Cir. 2021)). As for *Demos*, the way Defendants see it, that case actually supports dismissal of the *Monell* claim, as the court in that case dismissed a *Monell* claim which alleged that a county sheriff failed to train correctional officers on properly administering inmate's prescription medications. *Id.*

Failure to train claims are a "tenuous" form of *Monell* liability. *Ruiz-Cortez v. City of Chicago,* 931 F.3d 592, 599 (7th Cir. 2019). A municipality may be liable under Section 1983 for failure to train, but only when the inadequate training "amounts to deliberate indifference to the rights of persons with whom the [police] come into contact." *Flores*, 997 F.3d at 731 (cleaned up). As the Seventh Circuit explained, "[i]n

11

effect, by failing to train an employee whose conduct the municipality knows to be deliberately indifferent to the public, the municipality itself demonstrates deliberate indifference to that known risk." *Id*. That said, "failure-to-train liability does not require proof of widespread constitutional violations before that failure becomes actionable; a single violation can suffice where a violation occurs and the plaintiff asserts a recurring, obvious risk." *Id*.

Here, the Estate fails to allege a widespread practice sufficient to sustain a failure-to-train theory. Recall that the Estate alleges that the City failed to adequately train its operators and dispatchers "to specifically dispatch CIT trained officers to calls where responders were likely to encounter someone experiencing a mental health crisis" and failed "to implement a means by which the department's CIT trained officers on any shift could be identified by dispatchers, and then dispatched to respond to such calls." Compl. ¶ 83. But the Estate does not provide a sufficient factual basis for inadequate training. The Estate has identified only one instance where the City's dispatchers dispatched first responders who were not CIT trained to a situation in which an individual was in the midst of a psychotic episode.

The Estate also alleges that the City "was aware that its officers and agents were regularly dispatched to calls where they would encounter individuals suffering mental health crises, and was deliberately indifferent to the likely risks and injuries likely to result from the City of Des Plaines's failure to adequately implement its CIT program." Compl. ¶ 88. Such an allegation is similar to what the plaintiff in *Haligas v. City of Chicago*, 609 F. Supp. 3d 619, 627 (N.D. Ill. 2022), cited by the Estate,

12

alleged and which the court found to support a failure to train claim. However, in *Haligas*, the plaintiff alleged (1) a single incident of false arrest and excessive force while responding to a complaint that the plaintiff was violating a child custody order, (2) that policymakers were aware of a "'recurring, obvious risk' that Chicago Police Officers would be called upon to enforce the rights of parties subject to child custody orders," *and* (3) the "Officers' aggressive response in [the plaintiff's] case reflects the general pattern documented in the DOJ Report of unnecessary escalation by officers dealing with non-violent, non-threatening suspects." *Id.* The court in *Haligas* found that those allegations were "minimally sufficient to survive defendants' motion to dismiss as to [the plaintiff's] failure-to-train claim." *Id.* Here, the Estate alleges only the single incident and that the City of Des Plaines was aware that officers and agents were regularly dispatched to calls involving mental health crises, but contains no additional allegation, such as an allegation that Rios's response in this case was consistent with a pattern of officers mishandling calls involving people in mental health crises or something similar. Accordingly, without more, the Court cannot say that the single instance identified by the Estate shows that the City of Des Plaines was deliberately indifferent based on its failure to train.

Moreover, the Court agrees with Defendants that state law, and specifically 50 ILCS 705/8, does not mandate the City of Des Plaines to do anything. Instead, to be liable under *Monell*, the Estate must adequately plead that the City was deliberately indifferent to a recurring, obvious risk of a constitutional violation.

In sum, the Court grants the motion to dismiss Count VII. The dismissal, however, is without prejudice, as the Court cannot say at this juncture, that the Estate may not be able to assert a *Monell* claim based on the failure to train.

## V. State Law Claims

In Counts I–IV, the Estate alleges that Rios' conduct was willful and wanton and gave rise to wrongful death and survival claims. These claims, posit Defendants, fail for the same reasons that the Estate's excessive force claim against Rios failed. Memo. Dismiss at 12. But the Court could not address the parties' excessive force arguments based on the BWC for the reasons already stated, so the Estate's state law claims also survive the motion to dismiss.

## Conclusion

For the foregoing reasons, the Court denies the Estate's motion for the Court to consider the video exhibits [27] and grants in part and denies in part Defendants' motion to dismiss [8]. Specifically, it denies the motion to dismiss Counts I–V, the state law claims and § 1983 claim against Rios. It grants the motion to dismiss Count VI, the agency claim against the City of Des Plaines, with prejudice. Finally, it grants the motion to dismiss Count VII, the *Monell* claim against the City of Des Plaines, without prejudice. If the Estate intends to file an amended complaint consistent with

this Order, it must do so on or before July 23, 2025. Defendants' responsive

pleading to any amended complaint is due on or before August 6, 2025.


Dated: July 8, 2025

_____

Franklin U. Valderrama
United States District Judge